We will hear argument next in Case 22-666, Wilkinson v. Garland. Ms. Santos? Mr. Chief Justice, and may it please the Court, non-citizens who have lived here for 10 years, have good moral character, and a clean record, can seek immigration release if their removal will cause exceptional and extremely unusual hardship to a U.S. family member. If the agency concludes that the facts don't satisfy that standard, the question here is whether courts have the power to review that decision. They do. The INA limits review of denials of discretionary relief, but it permits review of questions of law. And as this Court held in Guerrero-Las Brias, the statutory term, questions of law, includes the application of legal standards to settled facts. Even the Board agrees that exceptional and extremely unusual hardship is a legal standard. So under Guerrero-Las Brias, the agency's application of that standard is reviewable. The government argues that Guerrero-Las Brias holding applies only to common law standards and offers a different test for statutory standards. And while jurisdictional tests are supposed to be simple, the government's fashioned an elaborate and amorphous framework that won't provide clear answers. First, courts should see whether the standard has a common law origin. If so, the government suggests it's probably reviewable, but doesn't commit either way. Next, courts should scour current and prior versions of the statute for any hints that Congress wanted the agency to have discretion, even if it later deleted the discretion-conferring language. If that doesn't somehow answer the question, courts should ask whether the standard requires evaluation and fact-weighing. They should then traipse through any version of the U.S. Code that has ever existed, looking for similarly-worded standards, and see if courts have ever labeled those discretionary. Taking these factors together, courts can then deem the standard a reviewable mixed question or an unreviewable discretionary one. It would be bad enough if the government were urging this test only for cancellation, but courts would have to apply it to dozens of INA standards, including whether a noncitizen has been rehabilitated, subjected to extreme cruelty, or violated the terms of a visa. I tried making a complete list last week and stopped count at 75. In other words, the government's test promises a never-ending supply of judicial review cases for this Court's merits docket. I welcome the Court's questions. We're allowed to certainly review questions of law. And, of course, the Court said it includes mixed questions of law. But in some of these cases, if we're looking at fact-finding, I think we agree that's not reviewable. On the other hand, if we're looking at legal standards, that is reviewable as they're applied to these facts. How does that work in your case? I didn't understand how it would work in some of the earlier cases. But if you could walk through how it would work here, how we would separate a review of a legal standard from a review of the facts in a case involving mixed questions of fact and law. Happy to walk you through that, Your Honor. So here we don't think that the question of whether something is a challenge to a fact-finding would really come up because the immigration judge credited all of the testimony and evidence that Mr. Wilkinson provided. But in a typical case, what would happen is a court would open up the blue brief, see if there are any challenges to findings of fact made by the IJ. And if so, the court wouldn't review any of those. And if the only challenge is to the IJ's or the BIA's ultimate determination that the standard wasn't satisfied, that would be reviewable. So here, for example, Your Honor, our submission before the Third Circuit on remand would be that while the IJ credited all of the facts and evidence, and while the IJ recited the right legal standard in a boilerplate section of its decision, it then, when applying the standard, disregarded all of the facts and factors that render this case exceptional and extremely unusual. And I would point to, for example, the fact that Mr. Wilkinson's son, M, has a serious medical condition that places him in the hospital with some frequency, that his mother has depression that renders her unable to care for M for days at a time, that M has learning and behavioral challenges that have been exacerbated by Mr. Wilkinson's detention, and that Mr. Wilkinson is not only the sole financial provider for M, but also is his only male role model and has been a consistent support emotionally and a physical presence in his life. And can you tell us how many people have a similar list of hardships in the whole group of people who are subject to the same immigration laws as this individual was? I cannot, Your Honor. I think in the immigration context, as in many contexts, there will be a lot of different facts that will be case-by-case. Well, but the statutory standard is exceptional and extremely unusual, not burdensome, not difficult, not very unfortunate, unusual, which requires a comparative analysis. And I don't see how doing the best you can to determine what that number is. And given the size of it, I don't know, maybe it's 3% of the whole population, maybe it's 20,000 people. It seems to me that it's hard to determine whether something is extremely and exceptionally unusual other than, I mean, it's not a purely factual question. The government talks a lot about discretion and in determining what weight should be given the factors you mentioned compared to other determinations. Maybe somebody has a particular physical impairment and the difficulties that they've encountered are as challenging as the ones here, but which one do you categorize as, does that make them both unusual? Well, Your Honor, we think that all of the points that you just raised, the fact that IJs see more of these cases, have more experience, all of that would probably cash out in the standard of review analysis. But those types of practical considerations don't have anything to do with whether the determinations are reviewable at all. And I think that what courts would do when reviewing these types of determinations is something similar to what the board does. It would interpret the language. It might note, for example, that exceptional and extremely unusual hardship is a different standard than extreme hardship, which appears elsewhere in the statute. So it would look to text, it would look to precedent, it would look to ordinary dictionary definitions, and that's exactly what the board did in Murillo-Aguinaga. Putting that aside, let's say they come up with a particular number. I mean, what percent of people with the same sort of challenging circumstances that you mentioned or substantially similar ones are there? Is it 1 percent? Is it 2 percent? And what constitutes extremely and exceptionally unusual? Those are judgments that call for a high degree of discretion on the part of the immigration judges. Well, I agree with Your Honor that they require a degree of judgment and experience and common sense, but the standard does not ask for a quantitative assessment. The standard, as interpreted in Murillo-Aguinaga, says that the hardship doesn't need to be overwhelming. It has to be substantially greater than is kind of incident to a family member leaving the country. And so those types of judgments might warrant a more deferential review, but it wouldn't have been— Are you—keep going, sorry. I was just going to say it wouldn't— it has nothing to do with whether this qualifies as a question of law as the INA uses that term. Are you acknowledging that it would be a more deferential standard of review by the Court of Appeals then? I think it likely would. After this Court's decision in Guerrero-Las Brias, courts have generally reviewed due diligence determinations for abuse of discretion, and so— How could it not be a deferential standard of review? I just want to make sure, because I think you're right, that it would likely be deferential, but what would be the circumstances under which it couldn't be? I am not going to push back on the fact that I'm virtually certain it would be deferential. I think that virtually every court on our side of the split has agreed that it would be a deferential standard of review, and I think all of those practical considerations go to that point. But one thing that I think is critically important is that those practical considerations, the courts said expressly in Guerrero-Las Brias, may be relevant to standard of review, but they're not relevant to whether there's judicial review at all. And I think the reason for that is important. That's because standard of review and reviewability have just totally different frameworks. Reviewability looks at— it's just purely an exercise in statutory construction, so you're looking at the canons of statutory interpretation. But when you're looking at standard of review, you use different decision-making criteria. So you'll look at, for one thing, is there a long and consistent history of appellate practice? And then you'll look at the practical considerations that might warrant giving more deference to one decision-maker or the other. But that just doesn't enter into the framework for looking at judicial review. But another way to think about the Chief Justice's question is to say that what he was talking about really does go to whether it's a legal question at all, including a mixed question. Because in a typical mixed question, you look at the law and you look at the facts and then you look at the law again and you see how it all matches up. But in this question, you're not really looking at the law at all. I mean, you sort of say, okay, it says unusual and exceptional, but the essential project is to look at one factual situation and compare it with many other factual situations. And so when you think of the essential project as that, it starts looking not like a legal question at all. Not just—so separate out, there are lots of legal questions that involve judgment and gray areas and all of that. But this, because of what it tells you to look at, which is compare this factual situation to many others you've seen, you have—where's the law in that? Well, Your Honor, I would make two points to that. The first point is that I think that that was essentially the government's exact argument in Guerrero-Lasprilla that due diligence determinations involve essentially no legal work and it's just the application of the standard to facts. And yet this court still held that constitutes a question of law. And I think it's because— I think you might be getting caught up a little bit in the kind of colloquial use of the term question of law. That term is kind of thrown out and in different contexts and used in different ways. But here, we're talking about the specific statutory term that this court interpreted to include the application of law to facts or a mixed question. Mixed questions are sometimes reviewed de novo. They're sometimes reviewed for clear error. They're sometimes reviewed for abuse of discretion. But they're still all mixed questions. And I think that comparative analysis that Your Honor points to is very similar to extraordinary circumstances determinations under—for untimely asylum petitions and due diligence. I think it's also similar to exceptional case determinations under the Patent Act and the Lanham Act. But that doesn't make it not a mixed question and it doesn't make it not reviewable. Isn't there this difference between the standard in Guerrero, La Espritia, and the situation here? If you ask—let's say you ask a person who is not a lawyer, an alien did not do something within a certain period of time. Was that—did that alien exercise due diligence? I mean, the ordinary person who's not a lawyer would say, I can't answer that question because it's a legal question. It has to do with legal procedures. But if you ask an ordinary person, you set out a certain set of facts. So let's say I'm complaining about my workplace. It's cold. It's set at 63 degrees. There isn't any coffee machine. The boss is unfriendly. All my coworkers are obnoxious. And you say, am I experiencing— I'm sorry. Any resemblance to any living character is purely accidental. Is that unusual or—am I suffering unusual or exceptional hardship? An ordinary person could answer that question and they could say, oh, come on, you know, that's work. Suck it up, right? So is that a difference between these two situations? Well, I think that there is still, Your Honor— First, this is still a statutory term that Congress chose, right? So this is the standard that Congress set. So I think you still have to determine what Congress was intending to— what Congress meant when it used these specific terms. It doesn't matter what the terms mean. These are ordinary terms. You can look them up in the dictionary. You don't even need to look them up in the dictionary. And that's essentially what the court said in other cases involving similar kind of common ordinary meaning terms like exceptional case determinations or even undue hardship under Title VII. But it's still an exercise—still a legal exercise to apply that standard to the facts as found by the IJ. But is it the type of legal exercise that Congress was intending? I mean, if we accept Justice Kagan's sort of framing of this as the essential project is the comparison of these facts to other facts, I guess my question is when we look at Congress's intent in this area, you know, it's about the division of labor, and to what extent did Congress intend for the court to be the one to make that comparison? On what basis could the court be making that comparison? And can't we say, given the clear jurisdiction stripping provisions as later interpreted by Patel, that really Congress wanted the agency to be the one to do that kind of comparison and not the court? No, Your Honor, we can't, and I'll explain why, and it has to do with the way that the structure of the statute works. So every single determination in the INA that is specified as being discretionary, it all falls within the scope of Section 1252A2B. So that's the jurisdiction stripping provision. But what subparagraph D, that's the limited review provision, does is it trumps that designation. So it says, nothing in subparagraph B or C or any other provision of this chapter shall be construed to preclude judicial review of questions of law. I appreciate that, but I understood that the enactment history was such that Congress put that in in response to St. Cyr and the concern that if it did what it wanted to do, which was get the judiciary out of this and give it to the agency, that there might be constitutional problems. And so Congress puts in this additional language that you're talking about, but only to the extent that we have a constitutional question or, and I take your point that it says questions of law, and we've, you know, suggested in or held in subsequent opinion that that includes mixed questions. But if we read mixed questions to be so broad that it is essentially, you know, supplanting the agency's decision-making, I find it hard to make the statute make sense. Well, I think you can look to what the court said in both Guerrero-Lasprilla and Patel about what would remain unreviewable after you apply the limited review provision and layer it on top of subparagraph B. And what the court said in Guerrero-Lasprilla is that the limited review provision would still forbid appeals of findings of fact. And in Patel, the court said the same thing. If we apply both statutes together, the major remaining category of determinations that are unreviewable are factual findings. I understand, but why would Congress want it to be that way in the statute? Why would it have a statute that has the agency making the factual determinations and the ultimate cancellation decision, but the court swoops in to just review, you know, the agency's actual function with respect to determining eligibility? I think for a few reasons, Your Honor. Number one is by doing so, by enacting the limited review provision the way it did, it still cut out any judicial review of findings of fact, which in many cases, in many cancellation cases, will completely control the conclusion. You won't always have cases like this one where the IJ credited all of the testimony and evidence that the noncitizen provided. And I think the second reason is that by enacting that provision, it got rid of an entire layer of habeas review. So district court habeas proceedings are still completely unavailable, but the typical role of an appellate court to review that application of the legal standard to fact, whether under a deferential standard or not, would still be maintained. Would you agree to that? Ms. Santos, let me try to get at the questions that you've been asked in a different way. What if we, let's say that I theoretically agree with you that under Guerrero-Lasprilla, mixed questions, including of this sort, would be subject to judicial review. Wouldn't you say, and I guess I'd push back a little bit on your characterization of Wilkinson's claims in particular below as being of that variety? Because, you know, I looked at the record. His claims, you know, the immigration judge, he claimed that the immigration judge wrongly speculated about the care and support the child would receive if the petitioner was removed. Now, I'll read, like, way in one. He found while Wilkinson does provide emotional support, removing him would result in minimal emotional hardship, because his son clearly has lived without Wilkinson's daily presence for most of his life because the mother had primary custody. So doesn't it seem like you're just seeking, or that your client was seeking a reweighing of those facts so that under Patel they really would be not subject to review? So the specific factual points that you pointed to, I agree with you, those would be unreviewable. Okay. But what would be reviewable is the ultimate determination of whether that satisfies the statutory standard. And it is often the case, for example, that, you know, when you're potentially challenging the weighing of various factors and facts, an agency or a court of appeals can't just supplant its view of the evidence for that of the agency, but still the ultimate question of whether those facts satisfy the standard remain a question of law. But it seems to me, and I've looked at some of these cases in the Sixth Circuit sides with you, but when it reviews these cases, it says that a lot of these claims about, well, you just didn't understand the strength of the emotional bond, or you didn't accurately predict what life would be like for my child if I were deported or removed, or my spouse. What the court says is those kinds of things are factual. And I guess that's where I'm stuck because even if I accept your argument as flowing from Guerrero-Lasprilla, it's hard for me to see, looking at these cases, very many that aren't essentially factual challenges. Well, Your Honor, I agree with you that all of those things you just pointed to that you cited from the Sixth Circuit cases, those are unreviewable. And kind of weeding out unreviewable findings and facts are things that appellate courts do all the time. They have to do so in every interlocutory appeal of a qualified immunity decision. So would you accept then that there would probably be only a very narrow slice of cases that a ruling in your favor would make judicially reviewable and including potentially even Wilkinson's own? I think it depends on what the board does in any given case. I agree with you, Your Honor, that if the IJ makes adverse factual findings or if all the noncitizen is doing is challenging factual findings on appeal, those won't be viable claims. But what would be reviewable is the ultimate determination of whether those facts satisfy the standard. And here I'll just point out briefly, Your Honor, that I think the Third Circuit clearly understood Mr. Wilkinson's challenge as being one to that next question because it said, and you can see this on page 3A of the petition appendix, that Mr. Wilkinson argues that the hardship his son faces is indeed exceptional. That's not reviewable because it's discretionary. The court did not say Mr. Wilkinson is challenging findings of fact, and under Patel those findings of facts are unreviewable. Do you agree that credibility determinations are factual for these purposes and therefore unreviewable? Yes, Your Honor. We don't think that credibility determinations present mixed questions of law and fact. And that's because, and just to kind of make sure we're all on the same page, the statute that the government points to is one that says, considering the totality of the circumstances and all relevant factors, the finder of fact when determining credibility can consider a non-exhaustive laundry list of factors. That doesn't fall within the definition of a mixed question. A mixed question involves applying a standard to undisputed or settled facts and determining whether the standard is satisfied. That counsel here, the BIA, doesn't review the IJ's findings on this being an exceptional case with deference. It reviews it de novo. So the BIA believes there's a legal standard, correct? Absolutely, Your Honor. And, in fact, when EOIR promulgated the clear error review for the first time in 2002, it actually used exceptional and extremely unusual hardship as an example of something that wouldn't be reviewed for clear error because it's not a factual finding. Is there any question that Justice Jackson has asked you, or even Justice Barrett? Justice Barrett is making the point, which is, unless we can distinguish Guerrera-Gasprilla, and I don't see how you can, unless you buy the distinction the government makes between statutory and common law findings, which makes no sense to me. I think your brief does a good job of that. These are all arguments that were rejected in Guerrera-Gasprilla, right? Yes. If Justice Jackson's unhappy with it, it has to overrule that case. I don't know that I want to get in the middle of it. Maybe you don't want to. That was a beautiful answer. In my own defense here, can I just ask, though, whether Guerrera-Gasprilla is helping us with a particular nuance that I see happening, right? We've said in other scenarios that not all mixed questions are the same. So even if we assume that Guerrero, as I'll call it, says mixed questions count for questions of law, is it possible that there are certain kinds of mixed questions that Congress intended to include here and other kinds that it didn't? So my example is a scenario in which the defendant or the petitioner is challenging the BIA's own rules with respect to how it applies this extreme and unusual hardship. So you say in your brief the BIA has looked at the statute and it has come up with factors that it says the IJ should be applying when it does this. If someone makes the claim that the BIA's factors are inconsistent with the statute in so far as they're applying it in this way in this case, I guess you could say that's a mixed question, perhaps. Maybe it's closer to the pure question of law, but at least you're challenging the BIA's interpretation of the statute with respect to the factors that it has created. Justice Barrett has come up with a different kind of scenario where we agree on the facts of this case and we agree on the standards, the factors. Everybody's saying, hooray, BIA, you have it right with respect to what the IJ is supposed to be looking at, but the claim is that the IJ has not weighed these factors appropriately, that it has put more stock in a certain segment of it than another, and the court, we really think you should re-weigh it differently. Now that might be a mixed question too, but it seems to me that it's of a different variety, and if we could interpret Guerrero to be talking about the former and not the latter, maybe it doesn't have to be overruled. So I don't think there's any way to principally read Guerrero-Lasprilla that way, and I'll give you two reasons. Number one is because of the way that the case was litigated. The government's view, the government's argument in Guerrero-Lasprilla was that, first, no mixed question should be considered questions of law. May I finish, Mr. Chief Justice? Yes. And second, that at the very least, super factly questions shouldn't be considered questions of law, and the court rejected that, and in doing so, its opinion did not distinguish any particular mixed questions, and it drew from a variety of contexts, including constitutional mixed questions, statutory mixed questions, and common law mixed questions. So I don't think there's any way to read Guerrero-Lasprilla narrowly, given the way the court wrote the opinion. Thank you, counsel. Justice Thomas? Justice Alito? Do you agree that the bottom-line judgment in every decision made by a court or an administrative agency involves a mixed question of law and fact, or perhaps a question of law? Your Honor, I believe that the application of any legal standard to facts qualifies as a mixed question. It may sometimes be driven by a particular factual finding, but the application of law to fact, I think, is. And that's what every judgment does, right? It applies the law to a particular set of facts. I guess it depends on what you mean by the term judgment, which I know is a whole issue in Patel, and I don't want to get caught up in that. But, yes, I think that any conclusion about whether a statutory standard is satisfied is the application of law to fact, and that presents a mixed question. And 1252A2 precludes reviewing judgments. So your argument is that although it precludes reviewing judgments, in fact, every judgment is reviewable because it's a mixed question of law and fact. Well, Your Honor, our position is that 1252A2B1 precludes judicial review over any judgment regarding the granting of relief. But if you look up two lines, it says, except as provided in subparagraph D. And if you look down a couple paragraphs, it says, nothing in subparagraph B shall be construed as precluding review of questions of law. So, yes, I think that the plain text of subparagraph D trumps a designation of a judgment as discretionary. It swallows up the exception completely. It doesn't, Your Honor, because it still precludes the judicial review of questions of fact, as this Court said in Guerrero-Las Breas and Patel, and it precludes any first-line habeas review, any habeas review at all, which removed an entire layer of judicial review. Justice O'Meara? Justice Thomas pointed out the very same arguments that Justice Alito has made, and that was one of his criticisms of the majority opinion, wasn't it? It was. It was that the majority opinion was categorical when it could have been narrow. And I think Justice Thomas pointed out what Justice Jackson noted, that there are different kinds of mixed questions of law and fact, and that the majority had ruled that out as a reason. That's right, Your Honor. I also think even beyond, I mean, I know that sometimes dissents are written broadly, but I do think that's an accurate categorization or characterization of what the majority decided. Justice Kagan? Justice Gorsuch? Can we agree that the ultimate discretionary decision rests with the Attorney General and is unreviewable too? It's unreviewable as a question of law, absolutely, because it doesn't involve the application of law to fact. It still would be subjected to subparagraph D, so any constitutional claims may exist. Sure. Thank you. Justice Kavanaugh? In response to Justice Jackson, when you said Guerrero rejected that kind of line splitting of mixed questions from more factual mixed questions, one of the reasons we did that, I think, is because it would be, as your brief says, a morass trying to do that across the board and would be years, if not decades, of litigation trying to resolve that question when, if you just do a deferential standard of review, the board's going to get affirmed most of the time, but not always, but most of the time, and you don't have this collateral litigation. Yes, that's right, Your Honor, and I think that pushing this into the merits bucket doesn't mean that we're just kind of repeating the same analysis. I think standard of review analysis is actually way simpler than the government's framework, and also waiver rules would apply, and courts can always say something like, under any standard of review, I would still reverse or affirm. So we think it will be much simpler and more streamlined. And, of course, there will be judicial review, which is really important, particularly in an immigration context where an error can have disastrous consequences by tearing apart families. I think we've thought about that in Guerrero and decided it's not worth the candle. But in any event, another question about the limits of your argument, which is, and this follows Justice Gorsuch's question, if the IJA said or the board said, we're going to assume arguendo eligibility, but as a matter of exercising our discretion, we would deny cancellation of removal in any event, that determination would be unreviewable, correct? Correct, Your Honor. This court does have a precedent on point. It's something like Ramz Manabad. I can't recall, but, yes, there's a specific precedent on point that says exactly that. Thank you. Justice? I, too, just have some questions about the limits of your argument. So, in our colloquy earlier, did I understand you correctly to say that even if this is a mixed question, even if, in theory, Guerrero-Lasbria applies here, permitting judicial review of the application of law to facts, that there's still a category of claims that a noncitizen might press on review that really are purely factual? I don't think that's what I was intending to say, Your Honor. Oh. My argument was that if, in a court of appeals, a noncitizen presses purely factual challenges, findings of historical fact, those will be unreviewable, and a court of appeals can just say, we aren't reviewing that. Okay, that was my question. Oh, okay. Yes, my apologies if I misunderstood. Okay. Definitely unreviewable under Patel. Okay. But you are saying, and I think this kind of came out when you were talking to Justice Jackson, that while the hypothetical that I just posed, you know, like, does your son have a mental illness or not, that's an unreviewable fact. Right. But you have said that the weighing of those facts, which one might be more important than others, or listen, I accept that your son needs your emotional support, you know, but I also accept that his grandmother cares for him, say, and so I just don't weigh it that heavily. Is that a factual question or is that a mixed question? I don't think that is a factual question. I think it has to go into the overall analysis, whether the noncitizen established exceptional and extremely unusual harm. So I think that that, you know, weighing might be viewed very differentially because of the proximity of the IJ to the facts and experience, but it wouldn't make it unreviewable. And I think here, for example, we would say, Your Honor, that the IJ really erroneously boiled the entire analysis down to economic detriment, which is not the way that you're supposed to apply the statutory provision. But any type of weighing would certainly be viewed deferentially. I just don't think they'd be unreviewable. Well, I guess I don't understand that. I mean, I agree with you if, say, the IJ said, Listen, all that matters is economics, and we'd say, Well, that was a misunderstanding of what the hardship standard requires. I mean, I can see why that's a question of law. But when you're talking about the weighing, I mean, let's say, yeah, I credit your testimony that you have a strong emotional bond with your son and vice versa. I also have testimony here that I also credit that the grandmother cares for him. I'm just making this up now. It's not your case. But the grandmother cares for him, and there's a strong emotional support there. And so I just think given those two, you know, I just don't think that the emotional support that the father provides is enough of a reason to say hardship. But you're saying that's a legal question, that kind of weighing? I'm saying that that constitutes a question of law as interpreted by the INA or as the INA uses that term, and that all of that would cash out under the standard of review analysis. Okay. And then last question. You have said in response to Justice Kavanaugh's questions that the standard of review would be deferential, and you initially said abusive discretion. And so I just want to clarify, is that what your position would be? There are various kind of articulations of deferential review. We haven't briefed that. And so I suspect it would be abusive discretion. Okay. But you're not making a commitment. You're saying you suspect, but maybe it's clearer. It might be. I mean, Your Honor, I would just say that that would, I'm sure, be briefed and has been briefed in other cases, and we just haven't here. But I do believe that it would be a deferential standard of review. You know, when you kind of layer the standard of review onto the administrative law context, there's lots of ways you could articulate what that standard is. But due diligence has been reviewed for abusive discretion since Guerrero-Las Brias. Thank you. Justice Jackson. So can I just go back to Justice Barrett's last hypothetical, where we have a situation in which the IJ has looked at the factors and has said, I don't, you know, I understand and accept your credibility about the strength of your emotional bond, but I also have testimony about the grandmother caring for your son, and at the end of the day, my conclusion, based on weighing all of these different factors and considering the evidence, is not met, this particular element. You, I think, say that's reviewable. I'd like to know what is the legal standard that I use as the court to review that determination and say, yes, you're right, or no, you're wrong. Am I looking at what? Well, assuming that some type, like abusive discretion type review would apply. One might reverse if, for example, an IJ ignored particularly salient factors that the law deems relevant to the NL. What law? This is not in the statute. The legal standard. Sorry, the legal standard in the statute, exceptional and extremely unusual hardship. That term has been interpreted by the board in the precedential decision, Monreal-Aguinaga, and so courts may look to that precedential decision. Does it matter that this case has come to me through the board, which presumably knows its own standard and has looked at this situation and said, we have a precedent, the one you described. We don't think that it precludes the IJ's determination, so we're affirming what the IJ has said about applying our own precedent to this circumstance. Well, Your Honor, I don't think that the fact that the board affirmed makes it kind of extra special. No, no, I'm just asking what the court is supposed to do, because we don't have a body of law that is existing outside, I think, of what the BIA has interpreted this to mean. And so the court would have to say, I guess, BIA, you're wrong about your own view of whether your standard applies in this situation. Well, so the court would be first starting with a standard that Congress said, right, and then it could decide whether it agrees with how the board has interpreted it. But that's not the challenge. Right, that's not the challenge. I agree with you, but if that was the challenge, then I'm in a question of law world. We agree that the board has interpreted it correctly. Yes. The question is, when the board says our standard equals no extreme hardship in this particular case, what is the court's basis for saying you're wrong? Well, under, for example, abuse of discretion review, a court could reverse if it had the definite and firm conviction that an error had been made, if it thought that the IJ and the board had just really, really missed the mark in evaluating the facts under the appropriate legal standard. I mean, I think that abuse of discretion, even deferential review of mixed questions, exists to make sure that the agency is staying within the bounds of what Congress said. That's what this court said in cases like Taylor v. United States. Okay, let me ask you one more question. In terms of the Congress's intent, and it's possible that this had been handled in Guerrera. I wasn't on the court at that time, so I just want to be clear. Sure. I'm interested in the sort of idea that what is left here is precluding questions of fact and habeas review. And it just strikes me as a really convoluted way for Congress in writing this statute to achieve that result. They say several times no court shall have jurisdiction to review judgments in this area. And if really Congress just wanted to say you can't review factual determinations of the agency, it seems to me there was a lot simpler way to go about that. So can you just help me with my nagging concern that maybe this is not what Congress was intending? Happy to do so, Your Honor. And this was specifically addressed both in Guerrera-Espria and Patel. And I think what the court said is a couple things. Number one, that this provision, the limited review provision, applies to a whole bunch of provisions throughout the INA. So it applies to forms of relief under subsection B. It applies to criminal alien final orders removal under C. It says it also applies to the entire rest of the INA. So I think what the court said is, you know, Congress was trying to loop in a whole bunch of different things. And it did it this way because it would apply to numerous different statutory provisions. And, yes, perhaps it might make more sense in some situations to say we just forbid findings of facts, but then it may have to kind of go provision by provision and explain when that was the case. Thank you. Thank you, counsel. Ms. Hintz. Mr. Chief Justice, and may it please the Court. The plain text of Section 1252A to B and D requires courts to distinguish between reviewable constitutional claims and questions of law, which includes mixed questions, and any other judgment regarding the denial of discretionary relief. And in Patel, this court was very clear that any meant any. That included subjective and objective determinations. That included the quintessentially discretionary determination at the second step as to whether an eligible noncitizen should receive cancellation of removal. But it also included credibility determinations, which the court recognized required some objective fact-finding but also some exercise of discretion. And it included simply finding historical facts. This noncitizen has been in the country for 11 years and meets the continuous presence requirement. Now, in order to figure out whether any of those statutory determinations, and all of the examples I just gave you are statutory determinations. They're made pursuant to a statute. In order to figure out whether those statutory determinations fall within the exception that permits judicial review of questions of law and constitutional claims, the court has to look at the statute and say, okay, is this a statute that's asking for a legal conclusion, like fair use? Or is this a statute that's saying, find a fact, like in Pullman's standard, where we had intention to discriminate, pure question of fact. Or is it a statute where the terminology is saying, make a discretionary decision, like in Williamsport Wire Rope, where we had the term exceptional hardship, and the court said, that's requiring a discretionary decision. And the court has to figure that out in order to honor the plain text of section 1252a to b. It can't decide that it would be easier just to say all statutory determinations are reviewable, because that's not what the statutory text says. And we think that if you apply the standard tools of statutory interpretation, that's text, history, and precedence, that's the complicated framework that I think my friend is referring to. If you apply those tools, you'll figure out that exceptional and extremely unusual hardship, that is a factual determination, and that's an exercise of agency discretion. That is not a legal conclusion. I welcome the court's questions. So why does the BIA review with de novo? Because the BIA reviews discretionary decisions de novo, so the de novo standard replies to discretionary. And why do they set a standard at all? Why don't they just make it discretionary? They set a standard. They say that the IJs use this standard to measure the decision bias. So it is not saying it's purely discretionary. It's saying we're setting a legal standard. No, it's not purely discretionary in that the IJ could just decide based on anything that it wants. Like the Attorney General can. Pardon? The Attorney General can. Well, there's a statutory text, and we freely admit that the interpretation of the statutory text is a question of law and that you can challenge that statutory text and say the board has misunderstood the meaning of these statutory terms. But, of course, that's not the challenge that we have here. Now, that is what the board has done. It has said this is what we think the statutory text means. It means make a decision about whether you think this noncitizen's facts are substantially beyond what you would get in an ordinary case. So the BIA has said make that discretionary judgment, make that predictive and comparative judgment, and that's it. There's no legal element to that conclusion. So it's just a weighing of evidence. It really reminds me of the credibility determination and the way the court talked about it in Patel recently. Ms. Sinsteck, it strikes me that everything that you just said is pretty much a re-litigation of the issue that was raised in Guerrero, that the government came in, basically made the same argument. The government said, you know, there are mixed questions and then there are mixed questions. There are mixed questions that are really super factual, and we accepted that distinction when it came to standards of review in Lake Ridge, but we specifically did not accept it when it came to this question. We said, you know what, we don't really care if it's primarily factual. We don't really care if it involves a lot of judgment calls. We don't really care if you have to really kind of search for the legal standard in the inquiry. As long as there is that legal standard and as long as all the fact-finding that you do and all the fact-weighing that you do eventually has to satisfy that legal standard, and the question is whether it does, it's a mixed question and it's reviewable. That's how I read that decision. You're just, you know, basically saying you don't like it. No. To be clear, we accept the holding of Guerrero-Las Gorillas, and we are not up here saying that mixed questions are unreviewable. So if we thought that the exceptional and extremely unusual hardship had a legal component, even if it was mixed in with the facts, then it would not be reviewable. But what we are here saying is just because a term is in a statute, that doesn't mean that it establishes a legal standard in the sense that Guerrero-Las Gorillas was- I mean, the question in Guerrero was this equitable tooling question, which is primarily a question of whether extraordinary circumstances prevent a litigant from doing what she should have done. I mean, it's the exact same thing. Are there extraordinary circumstances here? Well, we're going to, you know, think about facts a real lot. You know, what were those circumstances, and how extraordinary were they when they're compared to other circumstances that make it difficult to do what the legal rules tell you you have to do? I mean, I don't really see any distinction in the nature of the inquiry here. I disagree, and I first just want to point out that there was no debate in Guerrero-Las Gorillas that the court was dealing with a mixed question. So what constitutes a mixed question wasn't before the court, but I'm not here disputing that due diligence is a mixed question. And the reason for that is, I think, exactly what Justice Alito was speaking about earlier, which is that due diligence is a legal concept. It's a creature of the law. I mean, you can say that, but what it asks a decision-maker to do is say, how extraordinary were the circumstances that prevented you from following the rules? And that's exactly the nature of the question here. How extraordinary are the circumstances that were involved in a particular case? Now, you are correct that there is some overlap, and there are some similar things that adjudicators are being asked to do. I have to say what I find a little bit unsatisfying, but it's just the facts here, is that distinguishing questions of law from questions of facts and discretion is often a matter of history. So one of the things that the court repeatedly has done is just said, is this the type of analysis that the courts have done? It is a question of law. And we see that in TEVA. We see that in Oracle. Is this the sort of thing, question, that has been decided by juries or by fact-finders? Then it's not going to be considered a question of law. And I really do think that the common law history of the due diligence inquiry, that this is something that was a judge-made inquiry that was always decided by judges, elaborated by judges. It sounds very complicated. I mean, Ms. Santos says there are 75 of these, and we're going to do that analysis as to whether each of them is reviewable or not reviewable. We're going to look into the history. We're going to look into the source of law. We're going to look into, you know, who primarily has prerogative over this issue. It seems that Guerrero, when it came down to it, this is what Justice Kavanaugh said, is that it's not worth a candle. You know, of course, these are going to be reviewed extremely deferentially. But if there's a legal standard at issue, if the conclusion that the court comes to is, in the end, do these set of facts, as found, as weighed, satisfy this legal standard, then the better course is just to call it a day and say it's reviewable and not have to go any further. So I want to make a couple of points here. The first is that you're going to have to perform what you're referring to as a complicated analysis, which I would refer to as simply statutory interpretation and what the court does every time it decides a standard of review. And here's where I'm getting to. You're going to have to perform this analysis under Petitioner's framework, because Petitioner is saying the standard of review is going to turn on whether this is an exercise of discretion. I think she's saying abuse of discretion review. So it's going to turn on whether it's an exercise of discretion or it's a factual finding or it's a question of law. And what we're saying is, look, that's not the right analysis, because the statute says, no, it has to be a question of law for it to be reviewable at all. But if you think that, oh, the government's framework is too complicated, I don't think you're going to avoid it. You're just going to get these questions in the standard of review framework. On the standard of review, there are lots of different framings you can put on it. There are two main buckets, though, deferential or de novo, and I think what she was saying is it's going to be deferential. And so I don't know that you can frame it a lot of different ways, but basically, as counsel said, I think correctly, the usual analysis when you're doing these, and we've done a lot of these, is has the agency jumped the rails of reasonableness and how it determined whether a given set of facts constituted something extremely unusual. I think the problem here is that questions of law are reviewed de novo, that sort of black-letter law. And, in fact, the Fourth Circuit has reviewed a number of these exceptional and extremely unusual circumstances findings de novo, because they've said, well, we know the organization... Well, that's not, I mean, that's probably not correct to do it de novo in those circumstances is what counsel acknowledged, and I think correctly, like Judge Murphy said in the Sixth Circuit opinion, I think, was, okay, it's reviewable, what changes perhaps not much in terms of bottom line, because it's going to be deferential review, right? We think the problem, again, is that the only thing that Congress made reviewable is a question of law. So as soon as you're talking... Well, can I stop? No, keep going, actually. No, I mean, as soon as you're saying, no, we're reviewing something that's not a question of law, so de novo review is obviously not appropriate, I think you're in a little bit of trouble, because it seems like, actually, now we're talking about discretion, we're talking about fact-finding. Well, this is now Groundhog Day from Guerrero, because we talked about the history of St. Cyr and how the decision there recognized and the subsequent congressional history recognized that applications of law to fact would be considered questions of law, even though I'm with you as the first principal, I might not have gone down that road that Congress did, but that was, I think, the clear understanding of what questions of law covered, and we said as much in Guerrero, so that kind of ended that discussion, at least as I thought about it. No, again, what Guerrero said is that when you have a mixed question, so that assumes that there is a legal component, but what you have to be pointing to is what is the legal question, and there isn't a legal question there, and if I could just... So if it says the brief's due in 45 days except in unusual circumstances, is the except in unusual circumstances a... does that not have a legal component? That's a discretionary determination. I think that that is something where... I mean, you have to interpret the terms... But don't we hold all the time, courts of appeals, that lower court abused its discretion as a matter of law when it reaches a wrong judgment? Isn't that exactly what we say? I think that sometimes that is colloquially... Colloquially? I mean, isn't that exactly... If I might just finish. Yeah, okay, you agree. No, I shouldn't have said colloquially, but I will say that what I should have said, which is correct, is that I think that they used that in order to say this is just a really unreasonable exercise of discretion. Exactly. We say as judges all the time that, yes, the district court has ample room of discretion and discovery and undue hardship and due diligence and lots of things, but there are boundaries set by law that they cannot exceed. The guardrails are wide, but they're there. We don't say we disagree with this discretionary decision, and we would have done it differently. We say when they've reached those boundaries, they've erred as a matter of law, right? Yes, but I want to say you have to articulate what that boundary is. I just want to make sure I heard the first part of the answer was yes. The first part of the answer is yes, because we have conceded. If Petitioner says, as the law says, exceptional and unusual circumstances, and exceptional does not mean, for example, unique, and here the agency has said it means unique, that's an error of law. That's a misinterpretation of the statute, and that's a guardrail. You're right. That's a boundary. An agency cannot do something that the statute doesn't permit it to do, and if they do, and if a noncitizen says you have transgressed the boundaries that the statute says, then that's a question of law. It has to be colorable of law. But wait, wait, wait. Like, if transgressed the – I'm sorry. Sorry, no, please. If transgressed the – I mean, you're saying you put the boundary in the wrong place by saying unique, but transgressed the boundaries is, I think, what Justice Gorsuch is getting at. Imagine the worst case possible. Let's say the noncitizen has one child who has cancer. There's no other relative in the country. They have no support network. He's the sole breadwinner. So let's just posit that that's a heartland case for hardship under the statute. Couldn't it abuse – couldn't the BIA or the IJ abuse its discretion in a way that transgresses the guardrails by saying, no, that's not an exceptional and unusual circumstance? No, in the sense that we think that when you're asking to re-weigh or to redo the discretionary analysis – It's not re-weigh. It's not re-weigh. Well, so I'm not sure that what you're suppositing is any difference than in Patel where the noncitizen was saying, look, this is an unreasonable determination of the facts. No reasonable adjudicator could have found that I wasn't credible. No, in Patel he's saying – no, no, no, no. In Patel he's saying, you're wrong. You know, I was credible. That's different. That was one fact. This is saying, here are guardrails. I'm entitled for my eligibility determination to say that I'm eligible if I can show hardship required by the statute. And I have shown something that by any measure would be extreme and unusual. And you have said, applying that statutory standard to my circumstances, that it's not. So I think there, if you're making it a legal question, if you're saying the term exceptional and extremely unusual circumstances – let's say, you know, states the standard correctly but just says this doesn't count. Again, I think then you are talking about something like the Patel situation where you're saying no reasonable adjudicator who understood the law or who understood what credibility meant could have reached this conclusion. And that is exactly what the petitioner in Patel was saying. And the court still said, no, it's a question of fact and so it's not reviewable. And what we're saying is it's the same for questions of discretion. When the agency is being asked to make a comparative or a predictive judgment, that is something that was put off limits by – Counsel, if I might interject here. In Patel, it was – Mr. Patel sought to challenge the BIA's determination that he didn't intentionally deceive state officials. And the – I.J. found that he had, despite a lot of evidence that he hadn't. Okay. Enough. Enough. No, but that was – you won. I'm working with it. I'm working with it, right? And there the court said, per my friend next door, that that challenge, though Mr. Patel had lots of good facts suggesting he hadn't intentionally deceived state officials, couldn't be heard. Okay. Here in the example Justice Barrett just posited, there's no dispute about the facts. Okay. We have the child who has one potential caregiver in the world. Okay. No one's arguing about the facts. We're just arguing about the application of the law to those facts. I think – tell me where I'm wrong – where the BIA says, hmm, that's not extraordinary. Can't a judge say, as one would with due diligence or undue hardship or many other standards that we use that are equally amorphous, say, yeah, there's a large room there, but there are guardrails, and that this does or does not exceed those guardrails? No. It's challenging facts. It's not Patel. It's this circumstance. It's a discretionary determination. And we think that discretionary determinations are equally unreviewable. And we think that petitioner can – Well, I thought we just said earlier that there are guardrails even for discretionary decisions under law. I will never deny that if it's a question of law, if you're saying you misinterpreted the law, that is reviewable. But if it is a question of discretion, you think that the agency didn't exercise its discretion in the way you – Well, let me try it this way. Suppose that the judge says – recites the legal standard and then has another sentence and said, this means it has to be a one-in-a-billion case. Now, you would say that that's reviewable, and we could say, no, the judge got it wrong, correct? Because that's the wrong – a misinterpretation of the statutory text, that's correct. Yeah. So I think what Justice Barrett is suggesting is that the judge is doing the exact same thing. The judge doesn't say it has to be a one-in-a-billion case, but the judge is acting as though it has to be a one-in-a-billion case. And what Justice Barrett is suggesting is, well, in that case, again, there's been a legal error. The court has looked at some set of facts and reached a conclusion that is utterly inconsistent with the legal standard that is supposed to be applied. So it's not a legal standard. The legal standard – It's a statutory determination. The legal standard is unusual and exceptional hardship. That is the statutory terminology. That's the legal standard. She's not going to say. Let me not bite you on this, because I actually think that I agree with you. And I do think that the courts who have appropriately recognized that this is a discretionary and factual determination, they say this is about substance. It's not about framing. So if there is actually a good argument that there is a legal error, however the petitioner is writing about it, then, yes, that legal error is reviewable. What is not reviewable is the sort of claim that we have in this case, where the agency articulates the correct interpretation of the statute that the board has already given it, and then it explains all of the evidence, it explains the factual conclusions it's made, it explains its discretionary judgment, so it explains the predictive and comparative analysis. What you're doing is just basically trying to get away from the question. Because, of course, there are all kinds of reasonable things that immigration judges do every day. They mostly do them. It's like lots of facts, and it's a hard question, and it's a lot of judgment, and then we decide something, and, of course, the judge is going to leave it alone because it seems pretty reasonable. But Justice Barrett was suggesting that there are cases where, when the court looks at a set of facts and says that it does not satisfy what I'm going to insist upon calling the legal standard, which is extremely unusual hardship, that that counts as a legal error because it says if the court just gets the standard wrong. And I don't want to fight you on that. You're right. If it's a legal error, then it is reviewable. Well, you're not. You're fighting. Counsel, can I just – I think, for me at least, the labels are getting confusing. Because I kind of don't know what you mean when you say discretion or legal error. So can I just focus in on Justice Kagan's example to explain what I see as the distinction, and you can tell me if I'm wrong. So when the court, the IJ, says, I look at this statute, extreme and unusual, and I think that means that this has to be a one-in-a-billion case, the IG has stated a rule of interpretation. It's interpreting that language, and it's now applying this rule, I'm looking for a one-in-a-billion case. All right. You would agree that that's a legal question. If someone is claiming that that's the wrong rule, that it doesn't have to be a one-in-a-billion case, that we've got a legal dispute, correct? All right. Is there a difference between that and a situation in which we accept that the IG is correct in his rule? It has to be a one-in-a-billion case. But the IG, in applying that rule, looks at this constellation of facts that has been presented, finds the facts, and we all agree on the facts. But the IG says, when I look at these ten different factors and things, I think this is not a one-in-a-billion case. All right. And then the petitioner says, I agree with his legal rule, I agree with all the ten facts that he's found, but I think, court, this is a one-in-a-billion case. Decide. Is that second thing the same kind of legal issue? Is it presenting a legal issue? I hear you saying it's not, and so can you explain why not? Right. That's an exercise of discretion. That's exactly our point. That is an exercise of discretion. Like when the IG says, you know, this noncitizen has satisfied the eligibility factors, now I need to look at all of these facts and exercise my discretion to decide whether this is an appropriate case for cancellation of removal. So it's the same thing. Counsel, why isn't it an abuse of discretion in concluding that this set of facts doesn't meet the legal standard? I mean, we have three critical facts. Child, dying of cancer, sole support for no other family. Are you willing to tell me on that record that that's not a one-in-a-million case? Isn't that an error of applying facts to a legal standard? There's no discretion in that. I agree that if what the court says is the board obviously interpreted the statutes to require a one-in-a-million case and that is a legal error, that's reviewable. What is not reviewable is the board's application of discretion. So when you talk about an abuse of discretion, that's taken off limits. Isn't the answer to Justice Sotomayor because we don't have a basis in the law to make that determination? So I see, fine, one could say it's an abuse of discretion, but on what basis is the court able to make that determination? What I think, as Justice Jackson, looks abusive, what am I pointing to to make that decision? Yes, that's exactly right. So the statute entrusts that discretionary determination, that judgment call, that prediction about how much hardship will this particular noncitizen's relative likely face. How does that compare? Those are judgment calls. Those are – those questions are – See, I just have more confidence in Justice Jackson than maybe Justice Jackson does. I mean, just think about those facts that Justice Barrett just gave you. And we don't have the capacity as judges to say, you know, that counts as an exceptional and extremely unusual hardship. Of course we're not going to do it very much, but on those facts that a judge doesn't have the ability to say, you know, that immigration judge, we know that they're overworked. We know that they do a great job on 99 percent of the cases, but that judge just got it wrong. That's the determination that Congress made in 1996 when it barred review of any decision regarding denial of discretion. The determination that Congress made was to give legal questions to judges. And this is a question where the fundamental inquiry is, do those facts as found, as weighed, meet the legal standard? And this judge got it wrong. This judge being in not this case, but in Justice Barrett's hypothetical. Again, if you can point to a legal error. So if you can say, looking at these facts, the judge must have misinterpreted the statute, must have said this is a one in a million case, that's a legal error, that's reviewable. Okay. Why isn't that exactly Justice Barrett's case? Because the BIA, for example, has said that the standard, high as it is, doesn't require it to be unconscionable. That's the BIA's own standard. It doesn't have to be the one in a billion case. It's something less than that. And here we have, in Justice Barrett's hypothetical, basically the one in a billion case, right? Let's assume that, okay? And why couldn't, again, the court say, as Justice Kagan keeps trying to ask, in those circumstances, you have effectively misread the legal standard? I think I keep trying to tell Justice Kagan that that is a legal error that is reviewable. So I'm not trying to fight you on this. I think our brief is very clear. This is Section D, where we say, if you can point to a legal error, which raises a question of law, then review is permissible. So we all agree that a court can say, it doesn't have to be a one in a billion. This is on the nature of one in a billion. And when the BIA denies relief, it erred. I'm a little bit confused. I'm going to keep saying, if you can look at... Well, I don't want to be confused, so let me try it again. So we have Justice Barrett's case, the very, very unusual case. And the BIA says, we think it should be more, more demanding than that. A court can say, no, the exceptional hardship standard isn't anything, one in a billion. This counts. Oh, the court can interpret the statutory terms, exceptional, extremely unusual hardship. And the BIA has done that, and no one's questioning the BIA's statutory interpretation. But if there was a noncitizen here saying, you know, the board has consistently said, substantially beyond ordinary, but it should be a different interpretation of the statute. No, no, no. Equal question, that's reviewable. No, no. I'm positing we have the precedent we have, whether the BIA's precedent's right is another question. But just that we have this fact pattern, and the BIA denies review because they're busy, they have a lot of cases, and they do do great work. No one's questioning, or try to do great work. No one's questioning that. But they, in this particular case, deny relief. If it's a factual error, it's unreviewable. If it's a discretionary error, it's unreviewable. If the court can say, yes, your case has misinterpreted the statute, then it's reviewable. Does questions of law in the statute include application of law to fact? It includes legal errors. Does it include application of law to fact? Yes, and I'm explaining to you what that includes. It's a mixed question, right? So if you look actually to where that comes from, it's coming from, I've just forgotten the name of the case, the habeas corpus case. San Sierra. If you look back at the application of law cases, what those were were exactly sort of what we've been positing here, where it was clear from the facts of the case that the court had misinterpreted the statute. So in that way, in those cases, it was actually like a bankruptcy. But I think what Justice Gorsuch is getting at is, at least in my administrative law experience, abusive discretion is probably a distracting term. Let's call it an unreasonable application of law to fact. That's something we did all the time. Now, unreasonable application of law to fact means wide discretion, but deference is not abdication, as often said. And so there should not be abdication. There should be deference in the review of application of law to fact. But Congress was doing something when it said that denials of discretionary release, judgments regarding denials of discretion, are off limits. Keep going. No, don't keep going. I don't want to get in trouble. Why don't you finish your sentence? What you're saying, I think, is sometimes an agency exercises its discretion in a way that just seems totally inappropriate. But, again, what Congress did was take off the table the review of discretionary determinations. It just took that wholly off limits. Thank you, Counsel. Justice Thomas? Justice Alito? Well, I'm going to restate your argument or restate an argument that could perhaps work in your favor that is not the kind of argument that you, as an advocate before the Court in the face of Guerrero-Lasprie, is probably much inclined to make. But one might say, look, all right, here's Guerrero-Lasprie. It involved the application of a standard that only a lawyer can understand, and it's not the kind of standard that would be, for example, submitted to a jury without elaborate instructions or perhaps would not be submitted to a jury at all. And that's one way to read Guerrero-Lasprie. If you read it, for all its worth, as broadly as some of the questions suggest, it has the effect of making everything reviewable. And that is a strange way to read a statute that begins by saying that judgments are not reviewable. So the test would be this, and it isn't really all that complicated. If what is involved in a particular case, and, you know, you could say abusive discretion and unreasonable application, but, look, anybody who's litigated cases or has seen what willful judges can do knows that if you allow that little toe in the door, an awful lot can be done with it. That might be right or wrong. Judges love judicial review. Congress was less enamored of it when it enacted this statute. It says, no, no review at all, not abusive discretion. So the test could be restated as if it is the sort of thing that would be submitted to a jury without special instructions because it involves ordinary terms like exceptional and unusual hardship, that is not something that falls within the exception. Yes, and I think that actually does help very neatly with what the Court already said in Tolman's standard, where it said, you know, intention to discriminate, right? That's a statutory requirement. You might say there could be questions about what that means. And the Court said it could have, Congress could have been trying to refer to some legal presumption, some legal concept of discrimination or intention to discriminate, but instead would have said, no, look, apply statutory construction. And here is the same thing. Congress wasn't making this new legal concept, exceptional and extremely unusual hardship. Congress was saying, agency, make a judgment call, make a predictive and comparative judgment call about how the circumstances of this noncitizen's case compare to those of other noncitizens. All right. Thank you. Justice Sotomayor? Something new. Your distinguishing career. That's what Justice Alito is saying, because that's not what Guerrero said. Guerrero said every mixed question of law and fact. And you're saying, no, it's not mixed at all, because the standard is lawless. Basically, that's what you're saying. Because you can't call the standard a standard, exceptional, due diligence, undue hardship. You can't put words on a piece of paper and call the words meaningless. They have to set a standard. And once you set a standard, you're going to have to judge whether the facts fit that standard. Once you do that, Guerrero-Sperrini said, that's a mixed question of law that's reviewable by the court. We may not like the number of cases that come up, but I think your other side is right, that most of them fail under the abuse of discretion or clear error standard. Justice Barrett points out that the cases are rare, but they still exist. Meaning, that's why we have judicial review. It's rare that federal convictions are overturned. I think it's probably 5%, or it was a very low number of federal convictions were ever overturned. Yet we still permit review of them. We permit review not for the majority of cases. We permit review for the exceptions. And so I don't know how we get to where you want us to go unless we reject our precedent. And we invite all of the complications that that precedent was trying to avoid. So I think that Pullman Standard, Williamsport Wire Rope, and Duberstein are all good examples of cases where you had a statute, and it required some subsidiary fact-finding, and then the adjudicator had to put those subsidiary facts together to make an ultimate determination that was exactly the statutory text. And in each of those, it was not deemed a mixed question. So in each of those, it was deemed discretionary or factual. But it was still reviewable. It was still reviewable. It was still reviewable for whether it was unreasonable. To be clear, in Williamsport Wire Rope, it was not reviewable. And there it just depends on whether there is a statutory review bar. And let me just address this. I agree that normally discretionary determinations are reviewed for abuse of discretion. What I'm saying is that Section 1252A2B took that off the table because it said discretionary determinations, they are unreviewable. Any judgment regarding the denial of discretionary relief is unreviewable unless it involves a legal question. But when it doesn't, when it's an exercise of discretion, as the Court said in Williamsport Wire Rope, which is also this Court's precedent, that exceptional hardship, that was a discretionary question, and discretionary questions we know under Patel, we know under the plain text, are unreviewable. Justice Kagan? Justice Gorsuch? Justice Kavanaugh? I do have a few questions. If the Court concludes that the BIA or the IJ misapplied board precedent that existed, is that reviewable or not? So the IJ is bound to follow board precedent. So if the IJ has discarded board precedent, that's a legal error. Okay. And then I agree with a lot of what Justice Alito said about going back to the what was available in habeas and said specifically that it's not only legal questions but the erroneous application of statutes or interpretation. It distinguished those two things. Then Guerrero picks up on that, says English cases consistently demonstrate, consistently sincere, that the erroneous application of statutes includes the misapplication of a legal standard of the facts of a particular case, and then says that Congress took up that suggestion and then went and put questions of law and included erroneous application of law to the facts of a particular case. Do you disagree with any of that? No. Again, when there's been a legal error and that all of the cases that you're talking about involve legal errors, then, yes, it's reviewable. But unless you're saying that the argument that someone was about whether someone was continuously president for ten years, that the determination that he was in the country for nine years rather than ten, that's an application of law to facts. No, I agree with you on that. So then we know. But I think you disagree what, I'm not going to belabor this part, but what a legal standard is. You're saying this is not a legal standard. I'm saying that a statutory determination, just because it's a statutory determination, doesn't mean that its application presents a question of law. And I think that that's what this Court's precedents say. Now, I think that that means that a legal standard is not synonymous with a statute. And I don't think Petitioner has explained to you how you can tell, once you have a statutory determination, which statutory determinations only require fact-finding, only require discretion, only require a mix of those two, and which present legal conclusions. It can't just be every statutory determination. It's reviewable. Right. And then the last one, you've emphasized repeatedly, I think correctly, that the statute's about discretion, ultimately. And I agree with that, but that discretion, as I've understood it, is at the second step. So after you determine whether someone's eligible for cancellation of removal, then the Board has complete discretion to say, you know what, you're eligible, or I'll assume you're eligible, but you're not getting it. You're not getting it, and that is totally unreviewable. So that's a huge amount of discretion for the Board. That's where the discretion is. Not in doing the 10 years, extremely unusual, those parts for the eligibility requirements. That's not as discretionary. So in Zhang Hao Wang, this court said that when a court of appeals usurped the Board's right to determine what was an extreme hardship in that case, that was discretion that had been vested in it. So I think this court has already recognized that exceptional or extreme hardship, now exceptional, extremely unusual hardship, that's discretionary. And I would also point you to Oxane, which recognizes that exceptional is a term that itself conveys discretion. So I think just because there's discretion at the second step doesn't mean there's not also discretion at the first step. Thank you. Justice Barrett? So let's posit that you lose. Sorry. Just hypothetically, it seems to me in looking at cases in the circuits that side with Petitioner that most of the challenges that come up really are to facts or, you know, challenges where the Petitioner says, you know, he made the BIA, the IJ, was wrong to conclude that there would not be significant economic hardship down the road, for example. And the courts of appeals have said, well, that's speculation and, you know, that was within the IJ's authority to find that fact. So if you lost and if we said under Guerrero that mixed questions are reviewable and so the application of law to fact and the kind of hypothetical I gave would not be subject to the jurisdictional bar, do you agree that a lot of the questions will still be, a lot of the cases will still be unreviewable on Petitioner because they will still essentially be factual challenges barred under Patel? Absolutely. And to be clear, I think the government is fine with a ruling that says where there is a legal error that is revealed through the board determination, that's reviewable. What's not reviewable is, I mean, you can call it fact finding, you can call it discretion. I think as we make this point, and I believe we placed 42 of our briefs, that a lot of times in the administrative context what counts as a fact can look pretty discretionary like a credibility determination. It's highly subjective. If the court makes clear that those types of rulings are off limits but legal errors are on, we think that's a factual action. I'm saying application of law to fact. If in fact under Guerrero that is not subject to the jurisdictional bar and so the claim is, I think Justice Kagan was the one who said earlier, we stipulate all of the facts are true but you have misapplied the legal standard to the set of facts, thereby exceeding the guardrails. You've abused your discretion, say. Let's say that that kind of a claim is reviewable. But claims that are purely factual challenges like you did not appreciate the depth of my emotional bond, you know, with my son, that those kinds of things, do you agree that a lot of the challenges really are of that nature? And I'm asking the question because in arguing all of this is discretionary, all of this is discretionary and all of it is outside the bar, that raises the question, if you lose, does that mean that your position would lead to the conclusion that a lot of this stuff actually is reviewable? I agree and I think this is a really important point. I think if the court is going to say facts are unreviewable but there's some legal component, I think it's going to be very important for the court to spell out what are the facts. And I'm not sure, to be honest. I think the court is saying that, or I hear Your Honor to be saying that if it's a prediction about the future, that might be included as long been concluded as a forecast about lost earning potential, that's a classic fact. So I think the court is going to need to say, like, a prediction. I think the court should look at cases like Williamsport wire rope and say a comparison where you're looking at, you know, is this noncitizen more likely than another to experience hardship? I think those are going to be facts. But I do think the court is going to need to be very careful to give the court, the board, the guidance that it needs to say what is a fact. And I do think that we've given you sort of a framework of how the court in the past has looked at that lost facts divide. And we must admit, the court has said there's not one principle, right? It's a framework. You've got to look at the history. You've got to look at different things. But, yes, I mean, if the court wants to say just apply that lost facts divide and put all of the things like predictions, like comparisons on the facts side, we'd be very happy. We do think that the court needs to give that kind of guidance. Thank you. Justice Jackson? Can you just say a little bit more about why your way of handling this isn't administratively terrible? Because there is no – so there was some back and forth with your friend on the other side suggesting that you're going to open up a can of worms and theirs is better. So can you just speak to that? So, first of all, I think this is the way that most courts are already handling a lot of these things. So it's not going to open up a can of worms in that regard. The other thing that I'd say is this is just a matter of statutory construction. So you just need to look at whether we're dealing with a question of law. And I actually think courts are pretty experienced in knowing what questions of law look like. This is, again, the standard of review analysis. Every time they have to say, am I dealing with a question of law? Am I dealing with a mixed question? Or am I dealing with, you know, something that's discretionary or factual? So you're saying they're going to have to answer that question anyway, even under – Absolutely. Exactly. So that's a second point. And I'd also note that we've – sort of talking to our lawyers who litigate these cases, exceptional and extremely unusual hardship, that's the big one. That's what comes up again and again. But beyond this, they've pointed to maybe four or five things that are getting – that are getting litigated. So I think that maybe Petitioner has kind of gone through the law books and said, what, might I possibly make some kind of argument that this is a little bit mixy, a little bit legal? But that's not what's happening on the ground. We're talking about maybe, like, a few other things. And I think if this court provides enough guidance as to how you distinguish between law and fact, how you distinguish between a mixed question and a question regarding discretion or fact, I think that's going to clear up any confusion that's left. Thank you. Thank you, Counsel. Rebuttal? Thank you, Your Honor. I have about 42 points I'd like to address on rebuttal, but I will settle for about five. First, I think that my friend on the other side has mistakenly focused a lot of her argument on what Congress did in 1996. This case is about what Congress did in 2005 when it created an exception to Section 1252 A2B, and it amended both A2B and A2D to make clear that the limited review provision trumps the designation of a particular determination as discretionary. Second, Your Honor, I think all of my friend's arguments about this not being a legal standard really run smack into the Board's own understanding of what the hardship determination is. The Board said itself no less than a dozen times in its precedential decision in Monreal-Aguinada that this is a standard. It used its purported authority under Chevron to interpret that standard using the canons of statutory construction that courts use day in and day out. And it said the meaning of that standard can be further given shed light on it through case-by-case adjudication, which is all we're asking for federal courts to have the power to do. I think that the notion that it's not a legal standard just makes no sense. And I think the same is true with the notion that this is discretionary. Neither IJs nor the BIA understand themselves to have discretion when deciding whether someone is eligible for cancellation. And you can see this in cases like Monreal-Aguinada where the Board says things like, you know, if we only had discretion, we would absolutely grant cancellation. But Congress has put these constraints on us, so we don't have the power to do so. Also, Your Honor, there was a fair bit of discussion about the expertise that the agency has that makes it well-positioned to make these determinations, I think, in both sides of the argument. But the same could be said of every decision that immigration judges make, that patent ALJs make, that district judges make during sentencing. But appellate review is still a core and fundamentally important way that appellate courts make sure that agencies and district courts stay within the guardrails, as several justices have mentioned. And I think that's true even where appellate review involves deference. In cases where courts adopt deferential review for mixed questions like Cooter and Gell and like Village of Lake Ridge, the court still takes pains to make sure that, outside the guardrails, that appellate courts will be able to intervene and correct misapplications of law, misunderstandings of law, and inconsistent applications of law. And I think in the context of immigration decisions, where the risk of error could be enormous, judicial review is even more critical. And I would point you to the former IJ and BIA brief that talks about the enormous resource constraints that the agency is under. These officials are doing their best every day, but when you have 3,000 backlog cases on your docket, mistakes are going to happen. And the government's position, incredibly, is that as long as an IJ or the BIA just recites the right standard in a boilerplate section of its decision, it can go on to egregiously, arbitrarily, or completely inconsistently apply that decision, and courts are powerless to intervene. I think that Guerrero-Lasprilla squarely rejected that extreme result, and the government has pointed to no reason for a different result here. Last, Your Honor, I would point to the history test that my friend has pointed to. The government, I think, spent a lot of time really praising this historical test, but the point of jurisdiction is that it should be decided quickly. You shouldn't have to write or read a treatise to decide if you have power to hear a case. And even if some kind of historical approach were appropriate, the government's test here wouldn't be it. In the standard of review context, courts look for a long and consistent application, appellate practice, over an entire genre or class of decisions. They don't scour the U.S. Code to look for a single statute with one or two words in common and use that as a smoking gun for the way the government tries to use a World War I-era tax statute here. And even under the kind of standard of review type analysis, the government certainly can't point to any long and consistent history of appellate practice. At best, it has this 1919 tax statute, which wasn't reviewed. That was exceptional circumstances. It points to exceptional case determinations of the Patent Act, which were reviewed for abusive discretion. And, of course, we have undue hardship under Title VII and under the Bankruptcy Code, which is reviewed de novo. So even under a historical type analysis test, this case wouldn't even make any sense under it. Finally, the government's argument that it wouldn't make any sense for the standard of review to be mismatched with judicial review is exactly the argument that the government made in Guerrero, Lesbria, and it's exactly what the majority's opinion expressly rejected. And I think that most of my friend's arguments today were the same arguments the government made there. Thank you, Your Honor. Thank you, Counsel. The case is submitted.